CASE and Others *v.* WEBER and Another.

Case for obstructing a water course by a fish-dam to the injury of the plain-
tiffs' mill. Plea—not guilty. The defendants asked the following in-
struction, which the Court refused to give : "That if the fish-dam is built
three-fourths of a mile below the mill, and the jury believe from the evi-
dence that the said dam is only one foot high, and that the fall of the wa-
ter from the surface thereof below the plaintiffs' mill-wheel to the surface
thereof on the top of the fish-dam is nearly two feet, the jury may find
for the defendants." *Held,* that it is the duty of the Court to instruct the
jury as to the law, and inform them as to the legal sequence resulting from
given facts, but the Court is not bound to tell the jury that one fact ne-
cessarily results as a consequence of another fact, and, therefore, the pre-
sent instruction was rightly refused.

A person, who is in possession of land under a parol license, may main-
tain an action on the case against one obstructing his rights as such pos-
sessor.

APPEAL from the *Franklin* Circuit Court.

PERKINS, J.—Case for obstructing a water course by a
fish-dam, to the injury of the plaintiffs' mill. Plea—not
guilty. Trial by jury, and verdict and judgment for plain-
tiffs. The record does not purport to contain all the evi-
dence. It states that "the following evidence was given."
It does not say that other evidence was not also given,
and uses no expression tending to exclude the conclusion
that other was given. *Doe* v. *Hall*, at this term (1). Upon
the trial the defendants asked the Court to give this in-
struction to the jury:

"That if the fish-dam, the construction of which is
complained of, is built three-quarters of a mile below
the plaintiffs' mill; and the jury believe, from the evi-
dence, that said dam is only one foot high, and that the
fall of the water from the surface thereof below the plain-
tiffs' mill-wheel to the surface thereof on the top of the
fish-dam, is nearly two feet, the jury must find for the
defendants."

Four other instructions to the same effect, but expressed
in different language, were also asked.

They were all refused, and we think the Court was not
bound to give them.

It is the duty of the Court to instruct the jury as to the law; to inform them of the legal sequence resulting from given facts. Now, in this case, the question of fact was whether the fish-dam threw the water back upon the plaintiffs' mill-wheel, and the question of law was, whether, if it did, it was thrown back under such circumstances as rendered the defendants liable. As to this latter point, the Court was bound to instruct the jury, if requested. But the Court was not bound to tell the jury that, according to the principles of natural philosophy or of physics, one fact necessarily resulted as a consequence of another fact, and that is what it was asked to do in the instructions under consideration, viz., that if the surface of the water was higher on the wheel than on the dam, then the wheel could not, as a physical fact, be obstructed by the dam; in other words, that water would not run up hill; thus leaving the jury to infer the legal consequence, that the mill owners had not been injured. But though the Court perhaps might, it was not bound to, instruct the jury in the principles of philosophy. The instructions under consideration might have constituted a very good argument by counsel to convince the jury that the plaintiffs had not been injured, but we think they are not such as the Court was bound to give.

The defendants asked the Court to give the following instruction:

" That if the plaintiffs have placed their mill-wheel below the level of the water where it passes over the lowest line of their own land, and thereby caused the water to stand on their wheel, they cannot complain of the erection of the fish-dam of the defendants, three-fourths of a mile below the plaintiffs' mill, which does not back the water to the lowest line of the plaintiffs' land below their mill, and the jury must find for the defendants."

This instruction the Court refused to give, but charged the jury as follows:

" The plaintiffs are found to be the owners of a grist-mill situate on the west side of *White Water* river, the water from which, it is alleged, was accustomed to flow

through a tail-race, partly constructed on their own land, and partly on the land of *Moses Barber*. While so in the use of this property, the defendants, or some of them, built a fish-dam below *Barber's* land, and on land belonging to, or claimed by, one of them, by which dam it is alleged the water was backed up through this race upon the plaintiffs' wheel, to their damage. It is admitted that the lower part of the race passes over the land of *Moses Barber*, and it is contended that the plaintiffs have a prescriptive right to the use of the race in the manner it was used. We think, however, aside from any right by prescription, if the owners of the land below permitted or suffered the plaintiffs to dig out their race as deep as their wheel, after it was sunk, so that at the time the fish-dam was built they had, in possession and use, by means of that race, a free and open way for the water to pass from their wheel, we think that the defendants, not being the owners of the land over which the race run, had no right to hinder the flow of water through the race. Even if *Barber* could have stopped up the race on his land, other persons had no right, without express authority from him, to interfere with its use by the plaintiffs. If, therefore, the jury find that when the fish-dam was built the plaintiffs were in possession of the mill and race, and the race afforded them an outlet for their water, any injury done to that use or possession by that dam, by backing the water on their wheel, should be compensated by the persons who built it. But if, as alleged by the defendants, they had not this unobstructed flow of water when said dam was built, but the same was obstructed by bars then existing in the race and river below the wheel and above the fish-dam, so that the water's standing on the wheel was occasioned by such intervening obstructions, and not by the fish-dam, the plaintiffs should not recover."

The plaintiffs in this case, as riparian proprietors, had a right to receive, through a race, the water of *White Water* river, according to its accustomed flow—*currere solebat* —on its entrance upon their land; conduct it to their mill-

wheel; use it in its propulsion; and then, by a race, return said water to its accustomed channel in the river, on its departure from their land permitting it to enter the land of the proprietor below, according to its customary current. They had a right to sink their wheel as low as such a passage of the water would justify. Neither the instructions last above mentioned as refused, nor those given and objected to, have, however, any relation to this principle.

Again: the plaintiffs could acquire, by positive grant, or by prescription—twenty years' use—which is evidence of a grant—a right of way for the flow of the water from their mill, back to the channel of the river, at the line where the same leaves the land of *Barber*, the proprietor next below them, which would authorize them to sink their wheel to a depth enabling them to avail themselves of all the fall in the river upon their own and *Barber's* land, taken together. If they had done this, the instructions under consideration, which were refused, would have been clearly erroneous. As the evidence is not upon the record, we cannot say such was not the case.

Again: the instructions given assert this further position—that if the plaintiffs had acquired the right to so flow the water from their mill through *Barber's* land temporarily, by his mere license or permission, and had entered upon the exercise of said right, and the defendants, without any other ground to justify them than the mere ownership of the land still below *Barber's*, obstructed the plaintiffs' said privilege, they are answerable. We see no objection to this doctrine. *Barber* could sue them for flowing the water back upon him. These plaintiffs are, according to the supposition, in under *Barber*, exercising his rights. If encroached upon while so doing, we think they are entitled to their action.

*Per Curiam.*—The judgment is affirmed with costs.

*G. Holland*, for the appellants.

*J. B. Sleith*, for the appellees.

(1) See *ante*, p. 24.